ORDERED.

Dated: June 30, 2011

Eileen W. Hollowell, Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>AUGUST K. RISTOW, JR. and VICTORIA REI RISTOW,<br><br>Debtors. | Chapter 7<br><br>Case No. 4:10-bk-06491-EWH |
| AUGUST K. RISTOW, JR. and VICTORIA REI RISTOW,<br><br>Plaintiffs,<br>v.<br><br>GREAT LAKES EDUCATIONAL LOAN SERVICES, INC.; XPRESS LOAN SERVICING; EDUCATIONAL CREDIT MANAGEMENT CORPORATION; EDUCATIONAL RESOURCES INSTITUTE; AND NATIONAL COLLEGIATE TRUST,<br><br>Defendants. | Adv. No. 4:10-ap-01141<br><br>**MEMORANDUM DECISION** |

## I. INTRODUCTION

The Debtors seek to discharge over $80,000 in student loan debt incurred when Victoria Ristow decided to return to school to obtain an international MBA from a top-tier business school. For the reasons explained in the balance of this decision, a partial discharge of all but $13,000 of the debt will be granted.

## II. FACTUAL SUMMARY

The Debtors testified that they filed for Chapter 7 relief on March 10, 2011 primarily because they were working on a loan modification with their mortgage holder and needed more time to finalize the modification. They listed over $384,000 in secured debt and over $612,000 in unsecured debt on their schedules. Approximately $200,000 of the unsecured debt was for student loans incurred by Mrs. Ristow.

Mr. Ristow, who is 60 years old, is an interim Lutheran minister who works with parishes that are “in between” more permanent ministers. He currently works in Las Vegas, Nevada and expects to work there until sometime in late 2012. He would then be available to work with another parish somewhere in the region he serves, which covers parts of California, all of Nevada, and all of Arizona. His pay varies by the size of the parishes he serves. Currently, he is working at a large parish, so his income is higher than it would be if he were working at a smaller parish. Several years ago, Mr. Ristow attempted to leave the ministry to earn more income. He worked as a furniture repairman and restorer, but developed back problems and could not continue that work. He currently nets approximately $3,600 to $3,800 per month.

Mrs. Ristow is unemployed. For 28 years, she worked in vocational rehabilitation services, working with state-funded disability insurance providers who provided re-employment assistance for people on workers compensation or who are disabled. As states, including Arizona, began to suffer budget problems, funding for such services were cut back. As a result, Mrs. Ristow, in her mid-50’s, determined that she should seek more education in an effort to develop another career that she hoped would generate more income. Based on her management experience and some

international work she had done in the past, and based on its reputation as an internationally respected business school, Mrs. Ristow decided to obtain an MBA from Thunderbird School of Global Management ("Thunderbird"). She attended Thunderbird between 2006 and 2008. She completed the program with a 3.4 GPA. She continued to work at her existing job while pursuing the MBA, but her hours were cut back and, by the end of the MBA program, she had been laid off.

Thunderbird was an expensive choice. Mrs. Ristow's student loans exceeded $150,000. Mrs. Ristow timely sought forbearance and made some minimal payments on her student loans after graduation. The loans that are the subject of this adversary total more than $89,000 ("Student Loan Debt"). Educational Credit Management Corporation ("Defendant") answered the Complaint and objects to the discharge of the Student Loan Debt. The balance of Mrs. Ristow's student loans were discharged by a default judgment in this adversary in favor of the Ristows.

After graduation, Mrs. Ristow was not successful in obtaining employment, even though she used the resources of Thunderbird's placement office, a private career placement service and joined various networking groups. Notwithstanding those efforts, Mrs. Ristow obtained only a few interviews and no job offers. She has been unable to find work in her previous career field as a disability insurance case manager. With the exception of some unsuccessful short term consulting efforts, which would have paid her a fee if she was able to bring capital investment to a small business venture, she has not worked since graduating from Thunderbird in 2008.

Mrs. Ristow's unemployment benefits expired after the Ristows filed for bankruptcy relief. On the petition date, the Ristows' monthly expenses totaled

approximately $7,000, but since the petition date, they have reduced their expenses to approximately $3,700 per month. Their current income exceeds their expenses by less than one dollar. Postpetition, the Ristows have surrendered their interests in time share condominiums and a recreational vehicle. They have lowered their mortgage payment with a loan modification. They own two cars – a 2007 Hybrid Honda Civic ("Civic") and a 2005 Honda Element ("Element"). Their car payments total over $900. The Element will be paid off in December 2011. They spend approximately $300 per month on gas and other transportation related costs.

Under the William D. Ford Federal Direct Loan Program ("Ford Program") for repayment of student loan debt, the lowest monthly payment available to the Ristows would be $268.91 under the "Income Based Repayment Plan" ("IBR"). The monthly amount due under the Income-Contingent Repayment Plan ("ICRP") would be $479.97.[1] The repayment period for the IBR would be 25 years. During the course of this litigation, the Ristows were informed of the options available under the Ford Program, but did not submit an application for any of the options.

Both of the Ristows testified that they have health problems. As noted above, Mr. Ristow has chronic back problems. Mrs. Ristow testified that she needs knee replacement surgery, but needs to lose weight before undergoing the surgery. She also has other problems associated with a car accident, including a hyper-extended thumb.

---

[1] Defendant's Exhibit R.

Mrs. Ristow testified that she believes that her MBA was most valuable to her efforts to obtain employment in the first two years after graduating from Thunderbird. She also testified that she believes her age (59) has been a liability in her job search efforts.

## III. ISSUES

1. Is the Student Loan debt dischargeable?
2. Is the Student Loan Debt partially dischargeable?

## IV. STATEMENT OF JURISDICTION

Jurisdiction is proper under 28 U.S. C. §§ 1334(b) and 157(b)(2)(I).

## V. DISCUSSION

### A. Introduction

Student loan obligations are presumed to be non-dischargeable "unless excepting such debt from discharge ... would impose and undue hardship on the debtor." 11 U.S.C. § 523(a)(8).[2] The term "undue hardship" in not defined by the Code, but "garden variety" hardship is insufficient. Educ. Credit Mgmt. Corp. v. Nys (In re Nys), 446 F.3d 938, 944 (9th Cir. 2006) quoting In re Pena, 1155 F.3d 1108, 1111 (9th Cir. 1998). The Ninth Circuit has adopted the three prong test, established by the Second Circuit in Brunner v. New York Higher Educ. Svcs. (In re Brunner), 831 F.2d 395 (2nd Cir. 1987), to determine if excepting a student loan from a debtor's discharge will cause undue hardship. Pena, 155 F.3d at 1112. Under that test, a debtor has the burden of proving by a preponderance of the evidence that:

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

1. the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the student loan;
2. that additional circumstance exist – indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and
3. the debtor has made good faith efforts to repay the loans. Brunner, 831 F.2d at 396.

Failure to satisfy any of the three requirements results in a finding of nondischargeability. Rifino v. United States (In re Rifino), 245 F.3d 1083, 1088 (9th Cir. 2001).

**B. The Brunner Test**

1. The First Prong

The evidence demonstrates that the Debtors barely break even every month. Their current expenses are not extraordinary, and the Defendant does not really argue otherwise. In its closing brief, the Defendant asserts that the Debtors pay too much for car payments and for general transportation costs. In fact, the Debtors' cars, both Hondas, have significant mileage.[3] Because current gas prices are over $3 per gallon, the Debtors testified that the transportation cost listed on Debtors' budget ("Exhibit 2") of $300 per month is understated. The other expenses the Defendant complains about – phone of $110 per month, TV service of $75 per month and home maintenance of $140

[3] Per the Debtor's schedules, on the Petition date, the Element had almost 75,000 miles and the Civic had over 53,000 miles.

per month are close to the Chapter 13 Trustee guidelines (“Guidelines”) in this district for a Chapter 13 debtor’s living expenses.[4]

A comparison of Debtor’s Exhibit 2 and the Guidelines indicates that the Debtors are below some of the expense categories and above others, but generally within the overall scope of expenses permitted for Chapter 13 debtors in this district. Courts, including this one, look to the Guidelines in analyzing the reasonableness of a debtor’s expenses under the first prong of Brunner. In re Bossardet, 336 B.R. 451, 455 (Bankr. D. Ariz. 2005).

The evidence demonstrates that there is currently no additional money from which the Debtors could make any payments on the Student Loan Debt. Accordingly, because their income barely meets their reasonable expenses, the Court concludes that the Debtors have satisfied the first prong of Brunner.

2. The Second Prong

In order to satisfy the second prong of Brunner, the Debtors must prove that the current state of affairs is likely to persist. In re Nys, 446 F.3d 938, 946 (9th Cir. 2006), the Ninth Circuit explained that the “additional circumstances” that will make it impossible for a debtor to repay a student loan in the future need be “exceptional” only in the sense that they demonstrate insurmountable barriers to a debtor’s financial recovery and ability to pay. Nys held that a debtor cannot chose to live a lifestyle inimical to repaying her student loans, but that a debtor should not be faulted for having

---

[4] A copy of the Guidelines are available at www.maney13trustee.com.

made reasonable choices that "now inhibit her ability to substantially increase her income in the future." Id. at 946.

Mrs. Ristow testified that she chose to pursue an international MBA at a prestigious institution because she believed it would maximize her chances of making a six-figure income. At the time she began her studies in 2006, the "Great Recession" had not hit Arizona. The placement office at Thunderbird provided her with encouraging figures about post-graduation job placements, and the school touted the networking opportunities provided to its graduates. Her testimony, which the Court found to be credible, was that she worked diligently for two years to try to find work, including work in her former professional field. She also testified that she believes that the prime time to find work as a newly minted MBA is within two years of graduation. Since over two years have passed since she graduated, and now that she is almost 60 years old with increased physical limitations, she is no longer optimistic about obtaining a six-figure MBA job. Not surprisingly, the Defendant disagrees and suggests that there is still time, once the economy improves for Mrs. Ristow to obtain work and further argues that she should be willing to accept pay at less than six figures. However, Mrs. Ristow's testimony did not indicate that she was unwilling to work for less than six figures. She testified that she has tried to develop work as an independent consultant and has investigated going back to case management work – all without success. This is not a case where the Debtors are attempting to discharge student loan debt after rejecting a reasonable opportunity to improve their financial situation. While the Defendant suggests that it is too soon to decide that Mrs. Ristow's job prospects will not improve, a

number of the factors listed in Nys, 446 F.3d at 946-47 as possible indicators of continued inability to pay are present in this case:

a. Lack of Usable and Marketable Skills – According to Mrs. Ristow, the need for international MBAs in a continued economic downturn is not high, and the Defendant did not provide any evidence to the contrary;

b. Limited Work Years Available – Defendant persuasively argues that when an individual like Mrs. Ristow chooses to seek higher education in her mid-50's, she must be expecting to work well into her 60's and even her 70's. But the Defendant does not suggest that Mrs. Ristow can work into her 80's and 90's. Moreover, due to the various physical problems that both Debtors testified about, it is unrealistic to expect huge increase in income over a prolonged period of time for the Debtors.[5]

c. Retraining and Relocation – It was Mrs. Ristow's efforts to retrain, combined with a downward economy which has led to the Debtors' current situation. There is no evidence that relocating will increase Mrs. Ristow's prospects for employment, and Mr. Ristow's job is tied to the region of his church.

---

[5] Defendant argues that the Court cannot consider the Debtors' testimony about their medical problems because there was no corroborating evidence from a medical expert. Courts are split on whether such corroborating evidence is required. Compare Educ. Credit Mgmt. Corp. v. Mosley (In re Mosley), 494 F.3d 1320, 1325-26 (11th Cir. 2007) (declining to adopt a rule requiring independent medical evidence to corroborate a debtor's credible testimony) with Nash v. Connecticut Student Loan Found. (In re Nash), 446 F.3d 188 (1st Cir. 2006) (suggesting that corroborating medical evidence is required). Defendant has not cited any Ninth Circuit authority to support its assertion, and the Court has found none. Because the Court found the Ristows' testimony about their medical issues to be credible, it has considered it in its Brunner analysis

d. Lack of Assets – The Debtors have no readily available assets to liquidate to pay the Student Loan Debt. They have surrendered or abandoned their time shares and recreational vehicle. The Defendant argues that the Debtors pay too much for their cars, but the Court is at a loss to understand what surrendering gas-efficient cars with existing extensive mileage would accomplish as the cars would have to be replaced by newer, likely more expensive, vehicles. Mr. Ristow testified that he needs a car for his work as a pastor to make visits and deal with the business of his interim parish. The Ristows live apart a good part of every month. Mrs. Ristow needs a vehicle while her husband is in Nevada. Defendant points out that the Element should be paid off in December of this year, and that will mean an immediate increase in the Debtors' income of $392. Defendant further points out that amount is more than the minimum payment the Debtors would have to make under IBR of the Ford Program. But, Defendant's argument largely ignores the expenses involved in maintaining a 70,000 plus mile car. The Debtors testified that their actual automobile expenses exceed the $300 of their budget (Exhibit 2). The Court notes that the Guidelines permit a monthly transportation cost of $300 per car. There may be some extra income for the Debtors after December 2011, when the Element is paid off, but, given increasing costs of gas and the general expense of dealing with older cars, the Court does not believe that Debtors' income will increase by the full amount of the Element payment. Accordingly, and as will be explained in more detail in the partial discharge section of this decision, the Court finds the Debtors have satisfied the second prong of Brunner, except that after January 1, 2012, the

Debtors will have a small amount of excess income from which they will be able to pay a portion of the Student Loan Debt.

3. The Third Prong

The final prong of Brunner requires that a debtor affirmatively demonstrate a good faith effort to repay student loans. Pena, 155 F.3d at 114. Good faith is measured by a debtor's efforts to obtain employment, maximize income and minimize expenses. In re Birrane, 287 B.R. 490, 499 (9th Cir. BAP 2002). In this case, the evidence indicates that Mrs. Ristow timely sought forbearance and made some minimal payments from her unemployment benefits. Such efforts have been found to demonstrate a goof faith effort to repay by a debtor. In re Pena, 155 F.3d at 1114. Defendant argues, however, that the Debtors cannot satisfy the third prong because they refused to submit an application to participate in the Ford Program. While effort to negotiate a repayment plan is an important factor to consider, it is not, as Defendant suggests, an absolute requirement to satisfying the third prong of Brunner. In re Blackbird, 2008 WL 8444793 *8 (9th Cir. BAP 2008) ("Moreover, while we are mindful that negotiating a repayment plan is not required to demonstrate good faith effort, it is a factor considered by the courts"). The Court must, therefore, analyze whether the Debtors' refusal to apply to the Ford Program demonstrates a lack of good faith.

Mrs. Ristow testified that the Debtors rejected applying to the Ford Program because: (1) she did not want her husband to become obligated for the payments; (2) because they could not currently afford even the minimum IBR payments; (3) and

because the 25-year repayment term meant they would be paying for the Student Loan Debt until they were 85 years old.[6]

The Debtors' reason for not pursuing the Ford Program – because they would be paying until they are 85 years old – does not demonstrate good faith. If a debtor has the capacity to pay a student loan debt, he or she should do so. Indeed, repaying student loan debt is of such importance that Congress has passed legislation that permits student loan collection against social security benefits. See Lockhard v. United States, 546 U.S. 142, 145 (2005); citing 31 U.S.C. § 3716(c)(3)(A) But, for the reasons already explained in this decision, the Debtors cannot currently make even the minimum payments under the Ford Program. It is a well-known truism that the law does not require a useless act and that is what an application to the Ford Program would have been for the Debtors at the time of trial because they did not have any income from which to make even the minimum payment. Under such circumstances, the Debtors' failure to apply to the Ford Program is not evidence of a lack of goof faith. Mrs. Ristow's timely application for forbearance, her efforts to repay, and her continued employment while in graduate school, do demonstrate good faith. Therefore, the Debtors have satisfied the third prong of Brunner.

But that does not end the analysis because the evidence indicates that by the end of this year the Debtors will have some excess income when payments on the

---

[6] The Court finds the first reason to be irrelevant to the analysis of good faith because Mrs. Ristow testified that even if her husband did not have to "sign" under the Ford Program, she would not submit an application for the other two reasons.

Element are completed, so the Court turns to the issue of partial discharge of the Student Loan Debt.

**C. Partial Discharge**

The Ninth Circuit recognized in In re Saxman, 325 F.3d 1116 (9th Cir. 2000), that partial discharge of a student loan debt may be appropriate in circumstances where a debtor may be able to pay a portion of the student loan debt. Here, the evidence demonstrates that the Debtors will never have enough income to pay the Student Loan Debt even under the least expensive Ford Program alternative, but that they will have a small amount of additional income by the end of 2011 when the Element is paid off. Therefore, the Court asked the parties to submit briefs on whether a partial discharge would be appropriate and, if so, in what amount.

The Defendant's brief argued that there was no basis to grant a partial discharge and that the entire amount of the Student Loan Debt should be declared non-dischargeable. Based on the evidence presented by the Debtors, the Court rejects that argument. The Debtors argued that they had satisfied Brunner and, therefore, that the entire debt should be discharged, but in the event that the Court found that a partial discharge is warranted, that 90% of the Student Loan Debt should be discharged. According to the Debtors, the amount of non-discharged debt should be $7,500, which the Debtors propose to pay, without interest, at the rate of $60 per month for approximately 10 years. The Debtors' brief does not explain how the 90% figure was derived or why the obligation should not include interest.

The burden of demonstrating a right to a partial discharge is on the Debtor. Carnduff v. U.S. Dept. of Educ. (In re Carnduff), 367 B.R. 120, 131 (9th Cir. BAP 2007).

A partial discharge may only be granted if a debtor satisfies all three prongs of Brunner for the portion of the debt being discharged. Id. at 129-30. Here, the evidence does not support the Debtors' 90% calculation. Once the Element is paid off, the Debtors will have additional income of almost $400. As noted earlier, that does not mean that the Debtors will have surplus net income equal to $400 every month, but it is reasonable to assume the Debtors will have some surplus income beginning in January 2012. Using the Guidelines, which permit transportation expenses of $300 per vehicle, the Debtors should have additional income of approximately $100 per month in January 2012. In light of the fact that there is no statute of limitations on student loan debt, the Court finds that the appropriate repayment period for the portion of the Student Loan Debt not being discharged should be the 25-year term provided by the Ford Program and that interest should accrue on the judgment at the 8% used for Federal Consolidated Loans. See Defendant's Exhibit R.

Using Bankrate.com to calculate payments of $100.34 per month over 25 years at 8% interest, the Court finds that the total amount of the Student Loan Debt NOT being discharged is $13,000.[7]

## VI. CONCLUSION

The foregoing constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052. Counsel for the Debtor is directed to upload two judgments as follows:

---

[7] Loan Calculator, Bankrate.com, http://www.bankrate.com/calculators/mortgages/loan-calculator.aspx (enter 13,000 for "Loan amount," 25 for "Loan term," 8 for "Interest rate", and Jan. 2, 2012 for "Loan start date," and then click "Calculate.") (last visited June 28, 2011).

1. A judgment discharging all but $13,000 of the Student Loan Debt.

2. A judgment finding that $13,000 of the Student Loan Debt is not discharged to be paid as follows:

   a. simple interest at the rate of 8% per annum will accrue as of January 2, 2012;

   b. From and after that date, the Debtors will be required to making monthly payments of not less than $100.34 to Defendant or its designee;

   c. Debtors may prepay the balance of the judgment at any time without penalty, and Debtors may designate how any payments over the $100.34 monthly amount are applied.

Dated and signed above.

Notice to be sent through the
Bankruptcy Noticing Center "BNC"
to the following:

Terry L. Goddard, Jr.
Law Offices of Terry L. Goddard, Jr., PLLC
2030 West Baseline Rd., suite 182-531
Phoenix, AZ 85041
Attorneys for Debtors/Plaintiffs

Madeleine C. Wanslee
Trish Stuhan
Gust Rosenfeld, P.L.C.
One E. Washington #1600
Phoenix, AZ 85004-2553
Attorneys for Educational Credit Management Corporation